IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KHARMEN JONES                                                                          PLAINTIFF

v.                                                            CIVIL ACTION NO. 1:25-CV-32-SA-DAS

ASHLEY FURNITURE INDUSTRIES, LLC                                        DEFENDANT

ORDER AND MEMORANDUM OPINION

On March 12, 2025, Kharmen Jones filed her Complaint [1] against Ashley Furniture Industries, LLC. Jones brings claims for race and sex discrimination under Title VII and race discrimination under 42 U.S.C. § 1981. Now before the Court is Ashley Furniture's Motion for Summary Judgment [31]. The Motion [31] has been fully briefed and is ripe for review. Having considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*[1]

On September 27, 2023, Ashley Furniture hired Kharmen Jones, a Black woman, as an inventory specialist at its Verona, Mississippi facility. During her tenure, Jones received multiple disciplinary citations for her work performance and behavior towards other employees. Also, Jones repeatedly lodged complaints about coworkers to HR and management. HR and/or management investigated the allegations and each time found that Jones' claims were unsubstantiated. At the outset, the Court notes that the facts surrounding the allegations made by both parties are, at times,

---

[1] The Court notes that many of the statements relied on by Ashley Furniture in Desi Roncalli's Declaration appear to be hearsay. [31], Ex. 2. For instance, Roncalli appears to rely on unsworn personnel documents related to Jones' employment. However, at the summary judgment stage, hearsay may be considered as long as "the statement[s] can be presented in an admissible form at trial." *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024). It appears likely to the Court that the hearsay statements contained in the Declaration are capable of being presented in an admissible form at trial. Therefore, the Court finds it appropriate to consider them for the purposes of analyzing the present Motion [31].

sparse. Nevertheless, the Court will walk through them and provide factual details to the extent possible.

After onboarding, Jones received hands-on training from her manager Michael Cantrell, a White man, and another inventory specialist, Thomas Britt, a White man, who she later alleged replaced her. Jones makes some allegation that another employee Richard Jolly, a White man, refused to train her because "[h]e didn't show [her] anything the first day that he was there." [33], Ex. 1 at p. 86. Ashley Furniture contends that Jolly was never tasked with training Jones.[2]

On November 7, 2023, Jones received a coaching after incorrectly receiving 20 purchase orders. On that same day, Jones and another employee, Jarmal Conley, a Black man, engaged in a verbal altercation over a personal issue that occurred outside of work. HR generalist, Kaycie Tracey, a White woman, investigated the incident and determined the altercation occurred because Conley had been dating Jones and another female employee simultaneously. Both Jones and Conley received a verbal coaching over the incident.

On November 20, 2023, Jones lodged a complaint to Tracey alleging that another employee, Jeremiah Blair, a Black man, was trying to get her terminated. In that complaint, Jones included a picture of Blair that she took of him while at work. Ashley Furniture alleges at this point Tracey determined that Jones violated company policy by taking a picture of Blair on the warehouse floor.[3]

Also in November of 2023, Jones alleges that maintenance employee Larry Clark, a Black man, told her that she was about to lose her job to Thomas Britt. Jones reported this to Cantrell but alleges she never got an adequate response.

---

[2] While this incident was referenced in the Complaint [1], Jones does not advance any argument in her Memorandum [34] on this point.

[3] The record is unclear as to whether, after this incident, Tracey advised Jones that taking pictures or videos of employees violated company policy.

On December 9, 2023, Jones lodged another complaint against Blair for interfering with her job duties. Tracey investigated and found the claim unsubstantiated.

On December 21, 2023, Jones lodged a complaint that an assembly line employee threatened her. During the investigation, Tracey interviewed multiple witnesses and ultimately concluded that Jones, not the assembly line employee, had behaved inappropriately.

On December 22, 2023, Jones lodged another complaint against Clark. In that complaint, Jones alleges Clark repeatedly told her she was going to lose her job, texted her incessantly, and made unwelcome romantic advances toward her. Tracey investigated and found that Jones, not Clark, had been the one texting and making advances. Another employee corroborated Clark's account of events. That same day, Jones received a written warning for "Violation of Conduct Expectations Policy" for "arguing with people, being combative, [and] being disruptive." [31], Ex. 9.

On December 26, 2023, Jones sent an email representing that the warehouse had 82 "Queen pads" on hand. [31], Ex. 8 at p. 1.[4] Less than an hour later, Cantrell went to the warehouse floor to retrieve some "Queen pads" and determined the count was "heavily inaccurate." *Id.* Cantrell counseled Jones about this event, emphasizing that inventory accuracy is extremely important.

On January 5, 2024, Jones sustained a work-related injury when a trailer pulled away from a dock while she was inside the trailer. Ashley Furniture investigated the incident and found that Jones violated safety policies, which caused the incident. Immediately following the incident, Jones refused to submit to a post-incident drug test and left the facility without authorization or permission. Ashley Furniture contends a refusal to submit to post-incident drug testing is equivalent to a positive test and grounds for immediate suspension pending termination—which it

---

[4] It is unclear whether this email was sent to Cantrell or another person with Ashley Furniture.

3

did not exercise at that time. Jones admitted she refused the drug test. However, on the same day, she took a drug test from a clinic in West Point, Mississippi, which she appears to allege yielded a negative result, and emailed it to Ashley Furniture. Jones returned to the facility later that day and left again without clocking out.

On January 9, 2024, Jones lodged a complaint against Jalissa Johnson, a Black woman, for intentionally bumping into her. Tracey investigated the allegation and found the bump was inadvertent and that Johnson immediately apologized. Another employee corroborated Johnson's version of events.

On January 10, 2024, Ashley Furniture issued Jones a Final Warning for Violation of Timekeeping Policy for twice leaving the facility without clocking out on January 5, 2024. On January 18, 2024, Cantrell counseled Jones for performance issues regarding the accuracy of her "BUN" count.[5] On January 25, 2024, Jones tendered her resignation via Teams message, but she retracted it the next day. Following the retraction, Jones sent HR director Desi Roncalli, a White man, a series of messages accusing coworkers of misconduct and requested a meeting. Roncalli, in his sworn declaration, stated that he met with Jones and told her to focus on her job duties and not monitor other employees.

Ashley Furniture alleges that, following these ongoing employment issues, Jones continued to display disruptive behavior and commit inventory errors. On February 12, 2024, Cantrell counseled Jones about sending confrontational emails to other employees. On February 15, 2024, Jones messaged Tracey about an issue with an assembly line worker. Tracey proceeded to the warehouse floor and observed Jones interfering with the assembly line. According to Roncalli's

---

[5] A BUN is a polyurethane foam block used for packaging and delivery.

4

declaration, Jones had told the line operator that Cantrell had instructed her to stop the line and measure product on the belt. Cantrell denied giving the instruction.

On February 17, 2024, Jones messaged Tracey a photo of two employees she claimed were talking about her. Tracey investigated the incident and instructed Jones not to take photos or recordings of employees inside the facility.

Ashley Furniture alleges Jones' behavior and errors in her inventory counts led to a meeting with upper management. On February 26, 2024, Director of Bedding Steve Koon, a White man, and Roncalli met with Jones. During this meeting, Koon corrected Jones' misunderstanding of various inventory processes and explained how they were to be performed. According to Koon, Jones could not correctly explain the inventory processes to him and instead insinuated her counts were off because employees were stealing. In a written report of the meeting, Roncalli noted that Jones had been instructed multiple times to stop taking pictures and videos of other employees. [31], Ex. 17.

On February 28, 2024, an employee reported Jones for recording him while at work. On that same day, Cantrell documented another BUN count inaccuracy. At this point, Ashley Furniture removed Jones from the BUN count due to repeated inaccuracies. On February 29, 2024, quality supervisor Magen Tyes, a Black woman, informed HR that Jones took pictures of her and told other employees that Tyes had been stealing products. Tracey investigated and found Jones' allegations against Tyes unsubstantiated.

On March 14, 2024, Jones received a written warning for bullying temporary (referred to as "temp") employees. On March 21, 2024, Jones complained to Tracey that a few coworkers were disrespecting her. Tracey investigated and determined that Jones had been confrontational with other employees and caused disruptions on the warehouse floor. During the investigation, Tracey

5

interviewed four employees who corroborated that Jones caused the conflict. The employees also reported that Jones took pictures of them. After this incident, Jones received a "Final Warning" for "Violation of Conduct Expectations Policy" for "being confrontational with employees and causing disruptions on the floor." [31], Ex. 22 at p. 1.

On March 27, 2024, Jones reported to Cantrell that certain "temp" employees were being rude to her. Cantrell and product inventory manager Casey Wenger, a White woman, investigated the situation. During the investigation, Wenger discovered a phone near the "temp" employees set to audio record. Wenger asked Jones if it was her phone, Jones did not respond but took the phone and walked away.

On that same day, Jones lodged another complaint with Tracey that one of the "temp" employees, a Hispanic woman, had threatened her. Tracey investigated and found that Jones caused the conflict. Following the investigation, Jones met with Tracey in her office and continued to allege that coworkers were hostile toward her and said she was going home. Tracey then warned Jones that if she left, it would be considered a refusal to work. Jones acknowledged the warning and left. Ashley Furniture then placed Jones on suspension pending an investigation.

On April 1, 2024, Roncalli spoke with Jones. During this conversation, Roncalli alleges that Jones admitted to taking pictures and videos of employees despite being told it was a terminable offense and that Jones admitted to refusing to return to work on March 27, 2024.[6] On April 4, 2024, Roncalli made the decision to terminate Jones.

Following her termination, Jones filed a charge of race and sex discrimination with the EEOC on May 28, 2024. The EEOC issued a notice of right to sue on December 13, 2024. Jones thereafter filed this suit, alleging sex and race discrimination in violation of Title VII and race

---

[6] Jones alleges this is the first time she was told not to take photos or record other employees. *See* [33], Ex. 1 at p. 60-61.

6

discrimination in violation of 42 U.S.C. § 1981. Through its instant Motion [31], Ashley Furniture seeks dismissal of all claims. Jones opposes the same.

*Legal Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

7

Importantly, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (*Adams v. Travelers Indem. Co. of Conn.*, 456 F.3d 156, 164 (5th Cir. 2006)) (internal citations omitted). Instead, the party opposing summary judgment must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

*Analysis and Discussion*

Title VII of the Civil Rights Act forbids an employer from, among other things, firing an employee on the basis of their race and/or sex. 42 U.S.C. § 2000-2(a)(1). The Act prohibits discrimination "because of" the prohibited basis or when the basis is "a motivating factor." 42 U.S.C. § 2000e-(k).

In her Complaint [1], Jones alleges that Ashley Furniture discriminated against her because of her race and sex. In support of her claims, Jones relies on circumstantial evidence and therefore the familiar *McDonnell Douglas* burden-shifting framework applies. *Harville v. City of Houston, Miss.*, 945 F.3d 870, 874 (5th Cir. 2019).[7]

Under the *McDonnell Douglas* framework, "[Jones] must make a prima facie case of race [and/or sex] discrimination, and then the burden of production shifts to [Ashley Furniture] to proffer a legitimate, nondiscriminatory reason for [its] action." *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021) (citing *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). If

---

[7] As noted previously, Jones' sex claim is brought only under Title VII, whereas her race claim is brought under both Title VII and Section 1981. Regardless, the analytical framework is the same. *See Winstead v. Boeing Aerospace Operations, Inc.*, 2025 WL 220013, at *6 (N.D. Miss. Jan. 16, 2025) (citing *Owens v. Circassia Pharm.*, Inc., 33 F.4th 814, 825 (5th Cir. 2022)) (additional citations omitted); *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation.").

Ashley Furniture does that, "the presumption of discrimination disappears," and Jones "must then produce substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is pretext for discrimination." *Id.* (citation and quotations omitted).

Since the parties rely on much of the same evidence in analyzing Jones' claims, the Court will evaluate them together.

### I.      *Prima facie case*

In order to establish a *prima facie* case of sex or racial discrimination, Jones must show that "she (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected class or treated less favorably than other similarly-situated employees who were not in her protected class." *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874-875 (5th Cir. 2019) (citing *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 426 (5th Cir. 2017)). Ashley Furniture only contests prongs two and four of Jones' *prima facie* case.

As to prong two, Ashley Furniture argues that Jones was not qualified for the inventory specialist position because of her numerous verbal and written warnings. The Court finds that this argument is misplaced. First, a "qualification" argument typically only applies in a failure to hire/promote claim. *See Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). Second, an employer must establish objective job requirements to make this argument. *Id.* Here, Ashley Furniture already found Jones qualified when it hired her, and it fails to point to any objective requirement that Jones failed to meet. Ashley Furniture's request for dismissal on this basis is rejected.

As to prong four, Jones identified Thomas Britt, a White man, as her replacement. Ashley Furniture does not dispute that that Britt replaced Jones. The Court finds this sufficient to meet prong four. For the reasons set forth above, the Court finds Jones met her *prima facie* burden.

II.      *Legitimate, non-discriminatory reason*

The burden now shifts to Ashley Furniture to provide a legitimate, non-discriminatory reason for the employment decision. *See Moss v. BMC Software*, 610 F.3d at 917, 922 (5th Cir. 2010). At this stage, Ashley Furniture's burden is simply to produce "evidence, which taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action." *Ruth v. Eka Chemicals, Inc.*, 92 F. Supp. 3d 526, 531 (N.D. Miss. Feb. 17, 2015) (quoting *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)) (additional citation and emphasis omitted). Ashley Furniture proffers two legitimate, non-discriminatory reasons for terminating Jones—poor performance and behavioral issues.

Importantly, Ashley Furniture is "not required to persuade the court that it was actually motivated by the proffered reasons . . . It must only clearly set forth, through the introduction of admissible evidence, the reasons for its decision." *Ruth*, 92 F. Supp. 3d at 532 (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 901 (5th Cir. 2012)) (additional citation and internal quotation marks omitted). This step involves no credibility assessment. *Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 236 (5th Cir. 2016). For summary judgment purposes, Ashley Furniture has satisfied its burden.

III.      *Pretext*

The burden now shifts back to Jones to establish pretext. *See Moss*, 610 F.3d at 922. "At the third step, the employee must produce evidence, or rely on evidence already produced, that refutes or contests the employer's evidence of a legitimate, nondiscriminatory reason. Stated

differently, the employee must produce or rely upon evidence that the employer's legitimate, non-discriminatory reason was only a pretext—that is, a false or weak reason . . . advanced to hide the actual . . . reason." *Id*. at 236-237 (citing BLACK'S LAW DICTIONARY (defining 'pretext'); *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)) (quotation marks omitted). The evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Owens*, 33 F.4th at 826 (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000)). Importantly, the plaintiff must rebut *each* nondiscriminatory reason articulated by the employer. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Alternatively, Jones, under a mixed-motive theory, may "offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic[s]." *Stelly v. Dep't of Pub. Safety & Corr. La. State*, 149 F.4th 516, 525 (5th Cir. 2025) (additional citation omitted). To meet her burden under this theory, Jones must make, at minimum, "some showing that the protected characteristic was at least partially a motivating factor." *Id*. at 525-26.[8]

In her Response Memorandum [34], Jones argues that Ashley Furniture's legitimate, non-discriminatory reasons are pretextual and false or unworthy of credence. Jones points to the following circumstantial evidence to show pretext: (1) pattern of credibility determinations, (2) inconsistent application of policy and shifting emphasis of reasons for termination, (3) temporal proximity, (4) sex-based remarks and gender-focused comments, and (5) workplace isolation. The Court will address each argument in turn.

---

[8] Jones makes little argument under this point. Notwithstanding, the Court will consider whether Jones has presented sufficient evidence to succeed under a mixed-motive theory.

    *i.     Pattern of credibility determinations*

The crux of Jones' pretext argument is that Ashley Furniture credited other non-Black and/or male employee's accounts over her own when investigating her complaints. She contends this pattern coupled with other evidence is probative of pretext.

In her Response Memorandum [34], Jones broadly alleges that "[she] testified that management discounted her concerns and credited others, and the record reflects that Defendant's investigations consistently found Plaintiff's complaints unsubstantiated." [34] at p. 13-14. To reiterate, it is Jones' burden to "identify *specific* evidence in the record" supporting her challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (emphasis added).

Here, Jones largely fails to cite any specific factual basis in the record to support her conclusion, save a citation to two pages of her deposition. During her deposition, Jones appears to identify two separate incidents to which she testified as follows:

Q.    . . . So why do you believe that Michael [Cantrell] and Kaycie [Tracey] discriminated against you based on your race?

A.    The temp – the girls that made the threats and were bullying me, there were a different race. Michael [Cantrell] took their word for it. He acted on their complaints – also, it was a difference between me and Christopher [Blair]. I made a complaint. Nothing was done about it. But when these white girls or girls of a different race say anything about what I'm doing, it was being handled.

. . .

Q.    . . . [Y]ou believe that there was some race discrimination going on because . . . the girls who you complained about – the coworkers that you complained about were white?

A.    I never complained about them.

Q.    Okay. And you believe because [Cantrell] credited what they said to him that [] somehow was race discrimination towards you?

> A.      Yes.
>
> Q.      Okay. And is that the same for Kacie Tracey, is that she credited the complaints of some white employees[?]
>
> A.      Yes.

[33], Ex. 1 at p. 32-34.

First, Jones alleges that a group of "temp" employees who were all White women complained about her. After investigating the incident, Cantrell told Jones to stay away from the "temp" employees. No disciplinary action was taken. Second, Jones made a complaint against Blair, a Black man, to Tracey which was investigated and found to be unsubstantiated.

Conversely, as the Court noted extensively in the factual background, Ashley Furniture provided numerous instances of it crediting the testimony of Black and/or female employees over Jones. Notably, Ashley Furniture credited the testimony of Magen Tyes, a Black woman, after Jones accused her of theft and the testimony of a Hispanic woman after Jones accused her of making threatening statements. Again, it is not the Court's duty to "sift through the record in search of evidence" to support Jones' argument. *Am. Fam. Life Assur. Co. of Columbus*, 714 F.3d at 896.

As noted previously, Jones largely fails to point to specific facts to support her claim. Despite this, the record does show that Cantrell and Tracey, at times, credited White and/or male witnesses over her. For instance, Tracey credited the testimony of Clark, a Black man, Johnson, a Black woman, and an unnamed group of White women over Jones at different times. Each of these circumstances involved a complaint and an investigation.

In cases where an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but "whether the employer reasonably believe the employee's allegation and acted on it in good faith." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (citing *Waggoner v. City of Garland*, 987

13

F.2d 1160, 1165 (5th Cir. 1993)); *see also Eaglin v. Texas Children's Hosp.*, 801 Fed. Appx. 250, 257 (5th Cir. 2020 (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

Here, Roncalli's sworn declaration presented considerable competent summary judgment evidence that Jones had violated company policy, caused altercations, and performed poorly. This evidence was gathered from several coworkers—including Black and/or female employees. Jones presented no evidence as to why Ashley Furniture's reliance on this evidence was in bad faith, unreasonable, or discriminatory. *Id.* Jones' own conclusory allegations that she did nothing wrong do not create a factual issue as to the falsity of Ashley Furniture's proffered reasons for terminating her. *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 ("unsubstantiated assertions are not competent summary judgment evidence").

Briefly, Jones appears to make some argument that the mere fact that her complaints, regardless of the testimony credited, were found unsubstantiated gives rise to an inference of discrimination. Again, Jones makes no claim that Ashley Furniture did not honestly believe the outcome of the investigations or its belief was unreasonable. As such, this claim does not create a factual issue for a jury.

> ii.    *Inconsistent application of policy and shifting emphasis of reasons for termination*

Next, Jones asserts that Ashley Furniture's stated reasons for her termination lacked consistency and "shift[ed] depending on the context." [34] at p. 11. Jones then argues that the fact that Ashley Furniture escalated discipline over time, rather than terminating her immediately for conduct it used as a basis for termination, is indicative of pretext. Specifically, Jones points out

14

that Ashley Furniture tolerated her violations of the no photos and recordings policy before eventually terminating her.

The Fifth Circuit has made clear that an inconsistent application or divergence from a discipline policy can support a finding of pretext. *See Eyob v. Mitsubishi Caterpillar Forklift America, Inc.*, 745 Fed. Appx. 209, 213 (5th Cir. 2018) (failure to utilize optional progressive discipline policy did not support a finding of pretext); *see also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) ("[W]hen an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to an inference of pretext."). During her onboarding, Jones signed and acknowledged Ashley Furniture's Culture Guide which included its discipline policy, the relevant portion of which provides:

> I understand that if I violate any Policy described in the *Culture Guide*, I may be subject to discipline, up to and including termination. Ashley will decide the appropriate discipline for any violation on a case-by-case basis and in its sole discretion. Ashley *may* also choose in its sole discretion to immediately terminate employment regardless of *whether or not* progressive discipline occurred.

[31], Ex. 3 at p. 1 (emphasis added).

Jones seemingly attempts to equate Ashley Furniture's use of progressive discipline with an inconsistent application of its policies that infers discrimination. Jones reiterates this progressive discipline argument throughout her analysis.

The Court notes that a *failure* to follow a progressive discipline policy can be a basis to infer pretext. *Goudeau*, 793 F.3d at 477. Here, Ashley Furniture's policy included an *optional* progressive discipline policy, and it also expressly reserved the right to terminate her immediately based on the circumstances and in its sole discretion. *Eyob*, 745 Fed. Appx. at 213. Thus, contrary to Jones' assertion, the record shows that Ashley Furniture's utilization of a progressive discipline

15

approach was consistent with its policy. Jones has failed to identify any evidence that Ashley Furniture diverged from any policy by engaging in progressive discipline or failing to terminate her immediately for any singular infraction.

Next, Jones takes issue with the no photo or recording policy itself, arguing it created a pattern that is probative of pretext. Jones explained that she attempted to document the allegations against her coworkers with photos and recordings, but Ashley Furniture labeled this documentation as a policy violation and used this violation as a basis for discipline and, ultimately, her termination. The argument is equally unavailing. Jones admits the policy existed and that she violated it. Further, she failed to articulate how the policy gives rise to an inference of pretext.

To reiterate, Ashley Furniture does not assert Jones' termination resulted solely from taking photos and recordings of employees. Instead, it was just one issue that is encompassed within Ashley Furniture's legitimate, non-discriminatory reasons for termination. Lastly, the Court notes that neither of these arguments rebut the evidence of her poor work performance. *Laxton*, 333 F.3d at 578.

### iii. *Temporal proximity*

Jones then argues the temporal proximity between her final warning and suspension on March 27, 2024, and termination on April 4, 2024, raises an inference that the termination may have been motivated by other factors. The Court disagrees.

To start, in the policy, which again Jones signed and acknowledged, Ashley Furniture expressly reserved the right to *immediately* terminate employees for any violation. [31], Ex. 3 at p. 1. In addition, in general, temporal proximity is relevant to a retaliation claim considering the time between the protected activity and adverse employment action. *See generally, Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Hernandez v. Yellow Transp., Inc.*, 670

16

F.3d 644, 660 (5th Cir. 2012). Here, Jones does not bring a claim for retaliation. Instead, she points to the temporal proximity between her final warning that resulted from a refusal to work, which is not a protected activity, and her termination. Jones cites no authority to support the proposition that this is indicative of pretext.[9] Simply put, the fact that Ashley Furniture terminated Jones a few days after she received a suspension for an infraction she admitted to committing is not indicative of pretext.

#### iv. Sex-Based Remarks and Gender Stereotyping

Jones attributes sex-based remarks to a coworker and "unprofessional, gender-focused comments" to Tracey. [34] at p. 14. Jones asserts that these comments, in conjunction with other circumstantial evidence, give rise to pretext. When comments are used as part of a broader circumstantial evidence case, "the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *Allen v. United States Postal Serv.*, 63 F.4th 292, 302 (5th Cir. 2023) (citing *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)) (citations omitted).

In her Memorandum [34], Jones fails to clearly identify any direct quote or speaker. Notwithstanding, it appears to the Court that Jones is referencing comments made by Christopher Blair and Kaycie Tracey. The Court will address each in turn.

In her deposition, Jones testified:

Q.  You were discriminated against because you're female. So I want you to tell me what evidence you believe you have to support that allegation.

A.  Well, with, you know, Rick [Jolly], it was more of she – I was more of a, you know, target due to my sex because I wasn't, I guess, stern enough as far as what I stood on as far as, like, okay, this isn't right. It was a lot of – it

---

[9] To the extent Jones relies on *Harris v. FedEx Corp. Servs.*, 92 F.4th 286, 297 (5th Cir. 2024), the Court finds it distinguishable because it dealt solely with a retaliation claim.

Case: 1:25-cv-00032-SA-DAS Doc #: 36 Filed: 06/22/26 18 of 23 PageID #: 409

was a lot of people against, you know, me just due to how I, you know, may have pointed things out. And I say that because I may point something out, and I wasn't looked at – I was being treated like a joke or something, like, it's a lot of men that were overbearing – overbearing taking against a lot of stuff that I was doing.

Q.      Okay. Let me back up a little bit. Let's get some – let me get this organized in my head. Did any manager or supervisor at Ashley ever say anything to you negative about you being a female?

A.      Yes.

Q.      I mean, they did? They specifically said something about – negative because you're female?

A.      In referencing to my job relation, yeah. They – she a woman. She don't know what she's talking about, stuff like that.

Q.      Okay. Who said that?

A.      Christopher Blair said it.

. . .

Q.      So I want to know who told you she's a woman, she doesn't know what she's talking about.

A.      Christopher Blair.

Q.      Chris Blair, but he's a coemployee. Right?

A.      Correct.

[33], Ex. 1 at p. 45-46.

It is undisputed that Roncalli was the sole person who made the decision to terminate Jones. Here, Jones fails to point to any evidence, or even allege, that Blair had "influence or leverage over [Roncalli]." *Allen*, 63 F.4th at 302. Nor does any evidence in the record support such a

proposition.[10] As such, any alleged comment by Blair is properly considered a stray remark and not probative of pretext. *See Sun v. TETRA Tech., Inc.*, 2023 WL 6892227, at *2 (5th Cir. 2023).

Next, Jones appears to point to comments made by Tracey. In her deposition, Jones testified:

> Q. I'm talking about managers or supervisors.
>
> A. Kaycie Tracey had mentioned about me, you know, being in, you know, oreince (phonetic) with other employees that are male. I could do whatever I want to do. It doesn't matter to us. You can, you know, sit your hoo-ha because – because, I mean, I'm grown. I can do whatever. I can freak on whoever I want to freak on here. It doesn't matter. But I was, like, stating claims that I was being harassed, once again, by a man. You're a woman. You can do whatever you want to do to your – for your body and stuff like that. I didn't feel, like, that was professional.
>
> Q. Kaycie Tracey said that?
>
> A. Yes.
>
> Q. Kaycie's female. Correct?
>
> A. Correct.
>
> Q. And were those comments made in relation to when you or in conjunction of when you complained about Mr. Blair and him wanting to develop a romantic relationship with you?
>
> A. And Larry Clark. The base – that was based on Larry Clark making an outburst on the floor when I was in the area counting after I reported him for sexual harassment saying that he was going to, you know, retaliate against me for whatever, for reporting him for harassing me, wanting relations with me, and me telling him no. Trying to get in text messages, actually.
>
> Q. Okay. So Larry Clark is another co-worker. Correct?
>
> A. Correct. He's in maintenance.
>
> Q. Just so the record is clear, do you believe any manager or supervisor at Ashley sexually harassed you?

---

[10] To the extent Jones makes any argument that Rick Jolly made any sex-based comments, it fails for the same reason as Blair.

A.     No.

*Id.* at p. 46-48.[11]

While unclear, it appears to the Court the conversation between Jones and Tracey concerned a caution against relationships in the workplace.[12] Notwithstanding the ambiguity, Jones does not even allege that it was discriminatory; instead, she argues the comments were "gender-focused[.]" [34] at p. 14. This differs from cases where courts have found a comment harbored a discriminatory animus. *See Green v. Univ. of Mississippi*, 2025 WL 3539292, at *6-8 (N.D. Miss. December 10, 2025) (decisionmaker told a Black female employee that she preferred a White male for the position); *Goudeau*, 793 F.3d at 476 (in an age discrimination case, supervisor repeatedly made negative, age-specific comments and threatened to terminate employees after hearing their ages). Again, it is Jones' burden to point to specific evidence in the record and articulate the precise manner in which that evidence supports her claim. *Ragas*, 136 F.3d at 458.

Here, Jones fails to point to specific facts or articulate how Tracey's comments had a discriminatory animus. Viewing in the light most favorable to Jones, the alleged conversation is an isolated incident and ambiguous, making it insufficient, on its own, to raise a fact issue as to whether Ashley Furniture's proffered justification for termination is false. *See Udoewa v. Plus 4 Credit Union*, 754 F. Supp. 2d 850, 872 (S.D. Tex. Nov. 15, 2010).

---

[11] Based on the Court's review of her filings, Jones seemingly does not argue that the comments by Larry Clark are evidence of pretext. Even if she did, it would fail as there is no evidence that he had influence or leverage over Roncalli. *Allen*, 63 F.4th at 302.

[12] While the timing of this alleged conversation is unclear, it is important to note that Jones previously dated a coworker, Jarmal Conley, which resulted in a verbal altercation at work for which both Jones and Conley were disciplined. [32] at p. 4.

*v.*        *Workplace isolation*

Lastly, Jones points to her testimony that she was the only Black person who worked in the office during daytime hours, and this racial isolation supports a finding of pretext. In her deposition, she testified:

Q.        … [Y]ou believe that [you were discriminated against] because of race?

A.        Yes.

Q.        … [W]hat evidence do you have to support that belief?

A.        Just the way I was treated. Basically I was the only black person in the office at that time, the only one.

Q.        You were the only black person where?

A.        In the office. Yes, they had an office. In the daytime, yes.

Q.        You weren't the only black employee there, though. Correct?

A.        Correct.

[32], Ex. 1 at p. 34.

The record does not support this claim. Jones' duties required her to walk the floor of the facility and interact with other employees. In fact, these interactions led to her numerous complaints, several against Black men and women, which the Court has already addressed at length. The Court finds the record devoid of any evidence to support that Jones was isolated, or that any isolation was due to race.

In sum, Jones presented no evidence to show that Ashley Furniture's legitimate, non-discriminatory reasons for termination are unworthy of credence or support an inference of discriminatory animus.[13] Assuming, *arguendo*, that Jones had provided enough evidence to permit a finding that Ashley Furniture's proffered justifications are false, she has at most presented a mere

---

[13] To be clear, Jones does not allege disparate treatment.

21

scintilla of evidence that the true reason for her termination was discriminatory animus. *See Owens*, 33 F.4th at 835. Jones must produce evidence that permits a reasonable inference that the real reason was impermissible discrimination. *Id.* (citing *Sandstad v. CB Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). She has not done so.

Again, the Court reiterates that Jones must rebut each proffered legitimate, non-discriminatory reason for termination, which again is behavioral issues *and* poor performance. *Laxton*, 333 F.3d at 578. Viewing the evidence in light most favorable to Jones, she failed to point to *any* evidence in the record to rebut her poor work performance. Summary judgment is appropriate for this reason alone.

Alternatively, under a mixed-motives theory, Jones fails to make a showing that her race or sex was a motivating factor of Ashley Furniture's termination of her employment. Fifth Circuit precedent is clear that "[e]ven when an employee presents evidence that would allow a jury to conclude that an employer's proffered justification is false, that does not necessarily permit a rational inference that the real reason was discrimination." *Owens*, 33 F.4th at 835. The only competent summary judgment evidence submitted by Jones is her subjective belief of discrimination—this is insufficient to meet her burden under the mixed-motives theory. *Moreno v. Dealer Integrated Servs., L.L.C.*, 2026 WL 1286835, at *4 (5th Cir. 2026) (citing *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018)).

*Conclusion*

For the reasons set forth above, Ashley Furniture's Motion for Summary Judgment [31] is GRANTED. Jones' claims are hereby dismissed *with prejudice*. A Final Judgment will issue this day.

SO ORDERED, this the 22nd day of June, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE